**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**
Caption in compliance with D.N.J. LBR 9004-1(b)

**McCARTER & ENGLISH, LLP**
Clement J. Farley
Jeffrey T. Testa
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
Telephone: (973) 622-4444
Facsimile:  (973) 624-7070
Email: cfarley@mccarter.com
Email: jtesta@mccarter.com

*Counsel to Technicolor Home Entertainment*
*Services, Inc.*

| |
|---|
| In re: |
| Cinram Group, Inc., *et al*.,[1] |
| Debtors. |

Case No. 17-15258 (VFP)

Chapter 11

(Jointly Administered)


**LIMITED OBJECTION AND RESERVATION OF RIGHTS OF**
**TECHNICOLOR HOME ENTERTAINMENT SERVICES, INC. TO THE**
**DEBTORS' MOTION TO REJECT CERTAIN LEASES OF**
**NONRESIDENTIAL REAL PROPERTY AS OF THE PETITION DATE**

Technicolor Home Entertainment Services, Inc. ("**Technicolor**"), by its undersigned

counsel, submits this limited objection and reservations of rights to Cinram Group, Inc.'s (the

"**Debtor**") *Motion for an Order Authorizing the Rejection of Certain Unexpired Leases of*

*Nonresidential Real Property as of the Petition Date* (the "**Rejection Motion**"), and in support

thereof, respectfully states as follows:

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are
as follows: Cinram Group, Inc. (0588), Cinram Property Group, LLC (9738), and Cinram Operations, Inc. (7377).
The Debtors conduct all of their business affairs out of offices located at 220 South Orange Avenue, Livingston,
New Jersey 07039.

## LIMITED OBJECTION[2]

1.      As the Rejection Motion provides, Technicolor and the Debtor are parties to a certain *Sublease* dated as of November 12, 2015 (the "**Huntsville Sublease**") concerning industrial property referred to as the Huntsville Property—with the Debtor as sublandlord and Technicolor as subtenant.  (Technicolor is identified as CT Acquisition Holdco, LLC.)

2.      In conjunction with entering into the Huntsville Sublease, Technicolor, the Debtor, and SIR Properties Trust —the prime landlord with the Debtor concerning the Huntsville Property (the "**Landlord**")—entered into a certain *Consent to Sublease* dated as of November 12, 2015 (the "**Consent Agreement**").

3.      Among other provisions, the Consent Agreement memorializes the Landlord's consent to the Debtor's and Technicolor's entry of the Huntsville Sublease and the terms thereof. The Consent Agreement also sets forth Technicolor's rights relating to the termination of the Huntsville Lease (the prime lease).  Specifically, the Consent Agreement permits Technicolor's continued use and possession of the Huntsville Property under the terms of the Huntsville Sublease, with Technicolor issuing all rental payments to the Landlord, subject to certain conditions and limitations.[3]

4.      The Rejection Motion does not reference or address the Consent Agreement, which is a stand-alone agreement, and Technicolor does not believe that the Consent Agreement is implicated or impacted by the Rejection Motion.  Nor does Technicolor believe that the Debtor or the Landlord have any intent to seek to modify or reject the rights of any party to the Consent

---

[2] Capitalized terms used but not defined in this submission shall be given their meanings as in the Rejection Motion.

[3] Technicolor's description of the Consent Agreement and Huntsville Sublease is for narrative purposes only and shall not serve to waive any of Technicolor's rights or remedies under any agreements with the Landlord, the Debtor, or any of the Debtor's affiliated debtor and non-debtor entities.  In no event shall Technicolor be construed as being subrogated to the Debtor's liabilities and obligations under the Huntsville Lease.

2

Agreement.   However, in an abundance of caution and to the extent applicable, Technicolor

objects to the Rejection Motion insofar as the Debtor, and by extension the Landlord, seek to

reject, terminate, amend or otherwise impact the Consent Agreement as part of the Rejection

Motion.

5.      So as to prevent any future misunderstanding or misinterpretation as a result of

the implementation of the Order approving the Rejection Motion, Technicolor requests that the

Court require that any order authorizing the Rejection Motion include specific language that the

Consent Agreement is not rejected or affected by the Rejection Motion or Order approving the

Rejection Motion, and that the language in the Consent Agreement speaks for itself.

6.      Similarly, Technicolor is a commercial tenant at other real property owned by the

Debtor, referred to by the Debtor as the "**Olyphant Property**."   *See* Declaration of Glenn

Langberg [Doc. No. 8].   The lease agreement between the Debtor and Technicolor for the

Olyphant Property (the "**Olyphant Lease**") includes a cross-termination clause that is linked to a

termination of the Huntsville Sublease.

7.      Specifically Section 2(b) of the Olyphant Lease entitled Companion Lease states:

Lessor and Lessee acknowledge and agree that

> concurrently with the execution of this Lease, Lessee, as subtenant, and Cinram Group,
> Inc., a Delaware corporation and an affiliate of Lessor, as sublandlord, have executed and
> delivered a Sublease Agreement pertaining to certain premises located at 4905 Moores
> Mill Road, Huntsville, Alabama (the "**Companion Lease**"). Notwithstanding anything
> contained in this Lease to the contrary, the term of this Lease shall not extend beyond the
> term of the Companion Lease such that in the event of the termination or expiration of the
> Companion Lease, for any reason whatsoever, this Lease shall concurrently terminate as
> if the date of the termination of the Companion Lease was the date set forth the expiration
> of the Term.

8.      While it is the understanding of Technicolor that the Debtor is not seeking to

reject or terminate the Olyphant Lease through the Rejection Motion (and after discussions

among counsel for the Debtor and Technicolor, is considering carve-out language to be inserted

3

in any Order approving the Motion) given the stringent objection deadlines imposed by the shorted time order for the Motion, Technicolor hereby objects to any rejection of the Olyphant Lease and reserves its rights by the filing of this Limited Objection. Although the Olyphant Lease is not included in the Rejection Motion, Technicolor objects to the Rejection Motion insofar as it seeks to or may inadvertently implicate the Olyphant Lease or provide the Debtor with any right under contract or the Bankruptcy Code to terminate the Olyphant Lease. In the event the Debtors seek to have the Rejection Motion operate as a triggering mechanism of the cross-termination clause, Technicolor demands a full evidentiary hearing. In addition Technicolor expressly invokes its protections and rights under 11 U.S.C § 365(h). Certainly there is no prejudice to the Debtor in this regard, as to the extent the Debtors wish to take action regarding the Olyphant Lease, they may simply file another motion regarding the Olyphant Lease on notice to parties in interest with Technicolor reserving all rights.

9.      The Rejection Motion, which was filed on shortened time prior to the filing of the Debtor's schedules, also requests that the order granting the Rejection Motion establish a deadline of 30 days after entry of the rejection order for the filing of rejection damage claims. Given the complex nature of the properties and the rapid pace of this case, Technicolor objects to the this expedited deadline and requests that, if the Motion is granted, the counterparties to the Leases have at least 60 days after the entry of the order approving the rejection of the Leases to file their damage claims.

10.     Technicolor believes that the concerns and issues raised in this limited objection can be addressed and resolved by revising the proposed form of order granting the Rejection Motion, subject to the Court's approval. Technicolor's professionals anticipate working in good faith with the Debtors' and the Landlord's respective counsel in this regard.

4

## RESERVATION OF RIGHTS

11.      Because the Rejection Motion is being heard just eight business days after the Debtor's bankruptcy filing—and where no schedules or financial disclosures have been filed (or required to be filed for another 30 days), where the creditor formation meeting has not yet been held, and where the Court has no developed factual record to determine the basis of the Debtor's "business judgment"—Technicolor and its professionals are still in the process of reviewing the Rejection Motion, gathering information, and analyzing the impact of Debtor's bankruptcy filing at large to properly determine if the Debtors' actions are for the benefit of the estate.  As such, this Limited Objection is submitted without prejudice to, and with full reservation of, Technicolor's right to supplement this Limited Objection or request an evidentiary hearing to consider the Rejection Motion.  In addition, Technicolor reserves all rights and remedies—and nothing herein shall be deemed a waiver of any rights and remedies—under the Bankruptcy Code and all governing agreements between Technicolor, the Debtor (and any of its affiliated debtor and non-debtor entities), and the Landlord.

Dated: March 28, 2017
Newark, New Jersey

**McCARTER & ENGLISH, LLP**

By: */s/ Clement J. Farley*
    Clement J. Farley, Esq.
    Jeffrey Testa, Esq.
    100 Mulberry Street
    Four Gateway Center
    Newark, New Jersey 07102
    Telephone: (973) 622-4444
    Facsimile:  (973) 624-7070
    Email: cfarley@mccarter.com
    Email: jtesta@mccarter.com

    *Counsel  for Technicolor Home
    Entertainment Services, Inc.*

ME1 24486227v.1