**DRINKER BIDDLE & REATH LLP**
A Delaware Limited Liability Partnership
600 Campus Drive
Florham Park, New Jersey  07932-1047
(973) 549-7000
*Attorneys for SIR Properties Trust*

**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | (Hon. Vincent F. Papalia) |
| **CINRAM GROUP, INC., et al.,**[1] | Chapter 11 |
| Debtors-in-Possession. | Case No. 17-15258 (VFP) |
| | Jointly Administered |

**OBJECTION OF SIR PROPERTIES TRUST TO DEBTORS' MOTION FOR AN ORDER AUTHORIZING REJECTION OF CERTAIN UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY AS OF THE PETITION DATE**

TO:   THE HONORABLE VINCENT F. PAPALIA
      UNITED STATES BANKRUPTCY JUDGE

SIR Properties Trust ("SIR" or the "Landlord"), by and through its undersigned attorneys, hereby files this Objection to *Debtors' Motion for an Order Authorizing Rejection of Certain Unexpired Leases of Nonresidential Real Property as of the Petition Date* [Docket No. 10] (the "Motion to Reject")[2] and respectfully states as follows:

**FACTUAL AND PROCEDURAL BACKGROUND**

1.   On March 17, 2017 (the "Petition Date"), each of the above-captioned Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in this Court.

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: Cinram Group, Inc. (0588), Cinram Property Group, LLC (9738), and Cinram Operations, Inc. (7377).
[2] All capitalized terms not otherwise defined herein shall bear the meaning given in the Motion to Reject.

88181989.3

2. The Debtors continue to operate their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

3. On March 24, 2017, this Court granted the Debtors an extension of time to file their schedules of assets and liabilities and statements of financial affairs (the "Schedules and Statements") through and including April 24, 2017, without prejudice to the Debtors' right to seek a further extension of this time period by the filing of a motion on appropriate notice.

4. SIR, as landlord, and debtor Cinram Group, Inc., as tenant, are parties to the following: (a) the Huntsville Lease, for the lease of a 1.4 million square foot industrial facility and undeveloped land on approximately 161 acres, located at 4905 Moores Mill Road, Huntsville, Alabama (the "Huntsville Premises"); and (b) the Hanover Lease (together with the Huntsville Lease, the "Leases"), for the lease of an approximately 500,000 square foot industrial facility and undeveloped land on approximately 120 acres, located at 501 Ridge Avenue, Hanover, Pennsylvania (the "Hanover Premises"). Taken together, the Debtors lease from SIR nearly *2 million* square feet of industrial space and over 180 acres of undeveloped land.

5. On the Petition Date, the Debtors filed, among other things, the Motion to Reject, which sought the approval (a) to reject the Leases *nunc pro tunc* to the Petition Date, and (b) to abandon unspecified property located at each of the Huntsville Premises and the Hanover Premises. The Debtors are also seeking to reject the Huntsville Sublease and Hanover Sublease (collectively, the "Subleases").

6. The *Declaration of Glenn R. Langberg in Support of Debtors' Chapter 11 Petitions and First Day Motions* ("Langberg Declaration") [Docket No. 8] makes clear that the Debtor's obligations in connection with the Leases were the driving factor in the Debtors' decision to file chapter 11. Indeed, Mr. Langberg states that the Debtors (a) have no funded debt

obligations, secured or unsecured (Motion to Reject ¶21); (b) long term liabilities in connection with the Leases totaling nearly $200 million are unsustainable (Motion to Reject ¶26, n.5); and (c) were worried about the very real potential for an increased deposit under the Leases as a result of the Debtors' diminished net worth (Motion to Reject ¶31). There appear to be no other immediate issues presented in this case, no proposed debtor-in-possession financing, the Debtors are funding operations with cash on hand, and there is no need for relief at this accelerated pace.

7.   The Office of the United States Trustee will hold a meeting to form an Official Committee of Unsecured Creditors on April 3, 2017.

A.   <u>The Huntsville Premises</u>

8.   The Huntsville Lease requires Debtor Cinram Group, Inc., as tenant thereunder, to make payments of base and additional rent including real estate and other taxes, and the cost of insurance. The Lease also obligates the tenant, among other things, to maintain the Huntsville Premises, to indemnify Landlord for certain events, to remedy environmental issues and generally return the Huntsville Premises to Landlord free of personal property and in a "broom clean" condition.

9.   The Huntsville Lease is an unexpired lease of nonresidential real property.

10.  Technicolor Southeast occupies the Huntsville Premises pursuant to, among other things, the Huntsville Sublease. As set forth above, although the Debtors attempt to characterize the Huntsville Lease as a pass-through lease, in light of the options in the Huntsville Sublease of Technicolor Southeast to terminate and reduce the square footage, that characterization is inaccurate. Motion to Reject ¶¶11-12, 27.

3

B.  The Hanover Premises

11.  Like the Huntsville Lease, the Hanover Lease requires Debtor Cinram Group, Inc., as tenant thereunder, to make payments of base and additional rent including real estate and other taxes, and the cost of insurance. The Lease also obligates the tenant, among other things, to maintain the Hanover Premises, to indemnify Landlord for certain events, to remedy environmental issues and generally return the Hanover Premises to Landlord free of personal property and in a "broom clean" condition.

12.  Section 21 of the Hanover Lease further prohibits Cinram Group, Inc., as tenant, from assigning or otherwise conveying any interest in the Hanover Lease, or subleasing the Hanover Premises or any part thereof, to a third party without SIR's prior written consent.

13.  The Debtors have also permitted entry of two (2) unauthorized subtenants into the Hanover Premises. The Debtors provided SIR no written notice of these subtenants, did not seek consent as required by the Hanover Lease, and did not deliver a copy of either sublease agreement. The Motion to Reject acknowledges that these subtenants occupy a small portion of the Hanover Premises and generate approximately $25,000 of income. *See* Motion to Reject ¶¶15-17.

14.  Upon information and belief, these unauthorized subtenants of the Hanover Premises remain in possession and are fully operational. It is "business as usual" in Hanover.

15.  Further, SIR has little information about existing condition at the Hanover Premises, however SIR has begun its inspection and preliminary reports show that there are material deferred maintenance issues, environmental issues and clean-up that may be required, for which the SIR will incur significant cost to remedy.

16. Finally, the sum of postpetition amounts owed to SIR under section 365(d)(3) of the Bankruptcy Code under the Hanover Lease equals no less than $129,355.52 (the "<u>Hanover Postpetition Obligations</u>").

## **OBJECTIONS TO THE RELIEF REQUESTED AND REASONS THEREFOR**

17. The Motion to Reject seeks approval (a) to reject the Leases and Subleases *nunc pro tunc* to the Petition Date, and (b) to abandon unspecified property located at each of the Huntsville Premises and the Hanover Premises. The relief requested should not be granted for the reasons set forth below.

A. *<u>Nunc Pro Tunc</u> <u>Relief is Inappropriate</u>*

18. As a general matter, bankruptcy courts are instructed to be reluctant to grant retroactive relief, though retroactive relief can be available in extraordinary circumstances. *See, e.g.*, *In re Federal-Mogul Global Inc.*, 222 Fed. Appx. 196, 201 (3d Cir. 2007) (citing *In re Elder-Beerman Stores Corp.*, 201 B.R. 759, 764 (Bankr. S.D. Ohio 1996)). A request for *nunc pro tunc* relief on a motion to reject an unexpired real property lease "is the exception to the general rule that rejection is effective upon entry of the order." *Stonebriar Mall Ltd. P'ship v. CCI Wireless, LLC (In re CCI Wireless, LLC)*, 297 B.R. 133 (Bankr. D. Colo. 2003) (collecting cases); *see also In re New Valley Corp.*, No. Civ.A. 98-982, 2000 WL 1251858, at *15 (D.N.J. Aug. 31, 2000) (noting that the majority rule is that "court approval is a condition precedent for an affective rejection of a lease under § 365(d)(3)."); *Constant Ltd. P'ship v. Jamesway Corp. (In re Jamesway Corp.)*, 179 B.R. 33, 37–39 (S.D.N.Y. 1995) (stating the general rule).

19. An order granting a motion to reject does not apply retroactively automatically; a bankruptcy court must exercise its equitable powers to do so. *See New Valley Corp.*, 2000 WL 1251858, at *15; *In re Philadelphia Newspapers, LLC*, 424 B.R. 178, 185 (Bankr. E.D. Pa.

5

2010). In exercising its equitable powers, a bankruptcy court must weigh the equities of the case. *See, e.g.*, *In re O'Neil Theatres*, 257 B.R. 806, 808 (Bankr. E.D. La. 2000) (departing from the general rule because the debtor had officially terminated its business on the premises and the landlord had padlocked the premises prepetition); *Jamesway Corp.*, 179 B.R. at 38 (departing from the general rule because the landlord filed an improper objection). For example, rejection *nunc pro tunc* to an earlier date may be appropriate where the rejection poses no prejudice to the creditor. *In re Garfinckels, Inc.*, 118 B.R. 154 (Bankr. D.D.C. 1990). Likewise, where a lease is improperly surrendered, these equities weigh in favor of the landlord. *In re TW, Inc.*, No. Civ. 03-533, 2004 WL 115521, at *2 (D. Del. Jan. 14, 2004). Further, where a subtenant remains in possession of leased premises, rejection retroactive to the petition date is inappropriate; the appropriate date for rejection is when the debtor actually returns *possession* of the property to the debtor, which includes removing the subtenants. *In re Amicus Wind Down Corp.*, Bankr. Case No. 11-13167, 2012 WL 604143, at *2-3 (Bankr. D. Del. Feb. 24, 2012) (noting that there was no privity of contract between landlord and subtenant and finding that, absent state court eviction proceedings, the debtors could not unilaterally surrender the subtenant's possessory rights in the leased premises).

20. The Debtors have not provided the Court with any such extraordinary reasons justifying retroactive effectiveness of an Order granting the Rejection Motion. As an initial matter, SIR questions whether any real urgency exists here such that rejection is warranted on an expedited time frame sought by the Debtors. However, to the extent that any such urgency does exist, it has been manufactured by the Debtors to justify the extraordinary relief requested, and resolve the key issue in the case before even appointment of a committee. Further, it is not clear that the properties have been properly surrendered to SIR, which is reflected by, among other

things, the continued presence of subtenants at the Hanover Premises. Finally, rejection of the Leases at the pace proposed by the Debtors poses a threat to SIR, as SIR is left exposed to unauthorized subtenants, unknown conditions at each Premises and limited ability to mitigate its damages in the meantime because of a rushed rejection.

21. For these reasons, the balance of the equities weighs in favor of the Landlord and the Debtors should not be entitled to reject the Leases *nunc pro tunc* to the Petition Date. Any rejection should give the parties time to sort through these issues and be effective no sooner than entry of an Order of this Court and surrender of possession of the Hanover Premises to Landlord without the unauthorized subtenants in possession.

B.     Subtenant Issues Affect the Debtor's Ability to Effectively Reject the Leases

22. The Debtors have permitted entry of two (2) unauthorized subtenants into the Hanover Premises when it read the Motion to Reject. These subtenants purport to occupy a small portion of the Hanover Premises on a month-to-month basis and generate approximately $25,000 of income. The Debtors provided SIR no written notice of these subtenants, did not seek consent as required by the Hanover Lease, and has not received a copy of either sublease agreement. It is unclear that these illegal subtenants have been given notice to vacate the Hanover Premises, what the subtenants' intentions are with respect to continued occupancy, and what rights they may have under their unidentified subleases. They occupy the Hanover Premises at the behest of the Debtors and their continued presence constitutes possession by the Debtors of the Hanover Property. *See Amicus Wind Down*, 2012 WL 604143, at *2-3.

23. In addition, together with Debtors' request to abandon unlimited, unidentified property, the continued presence of subtenants at the Hanover Premises renders SIR unable to determine whether property belongs to the Debtors or some unknown occupant yet to vacate.

7

Any proposed order will need to confirm that all subtenants at Hanover Premises will vacate by a date certain and make clear that any abandonment shall be free and clear of claims by, among others, all subtenants (including Technicolor Southeast).

C.   The Landlord Is Entitled to Stub Rent at Hanover Premises

24.   The Landlord is entitled payment of the Hanover Postpetition Obligations, which represents for amounts due and owing under the Hanover Lease for the postpetition period of March 18 through 31 – the "stub" period – in the amount of $129,355.52.

25.   Section 365(d)(3) of the Bankruptcy Code requires the Debtors to "timely perform all obligations . . . arising from and after the order for relief under any unexpired lease of nonresidential property, until such lease is assumed or rejected, notwithstanding section 503(b)(1)." 11 U.S.C. 365(d)(3). "The clear and express intent of § 365(d)(3) is to require [Debtors] to perform the lease in accordance with its terms." *Centerpoint Props. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 268 F.3d 205, 209 (3d Cir. 2001).

26.   In the event the Debtors are not able to timely pay the Hanover Postpetition Obligations and otherwise comply with the Hanover Lease as required by section 365(d)(3) of the Bankruptcy Code, the Court should grant AMB an administrative expense claim for the Hanover Postpetition Obligations, interests and costs. Section 365(d)(3) of the Bankruptcy Code does not supplant or preempt section 503(b)(1) of the Bankruptcy Code; if a landlord cannot proceed under 365(d)(3) for any reason, section 503(b)(1) is still available to provide it with an administrative expense claim. *See In re Goody's Family Clothing Inc.*, 610 F.3d 812, 817–18 (3d Cir. 2010).

88181989.3

27. Under section 503(b)(1) of the Bankruptcy Code, SIR is entitled to an administrative expense claim for the Hanover Postpetition Obligations, interests and attorneys' fees because they are actual and necessary costs and expenses of preserving the estate. *See* 11 U.S.C. § 503(b)(1)(A); *In re Sportsman's Warehouse, Inc.*, 436 B.R. 308, 312–13 (Bankr. Del. 2009) ("There is no ambiguity . . . that rent is clearly an actual, necessary cost of preserving the estate, since the debtor's survival depends on its ability to pay the landlord for the right to possess the space necessary to conduct its business.") (quoting *Zagata Fabricators, Inc. v. Superior Air Prods.*, 893 F.2d 624, 627 (3d Cir. 1990)). Under the objective standard adopted in this district, SIR's claim is measured by the "reasonable value of the leased property without regard to the actual use by the debtor." *In re Cornwall Paper Mills Co.*, 169 B.R. 844, 850–51 (Bankr. D.N.J. 1994) (noting that the rental value fixed in the lease controls); *see also In re Einstein Moomjy, Inc.*, No. 11-34723, 2012 WL 2882943, at *8 (Bankr. D.N.J. July 13, 2012) (there is a presumption that the rental value fixed in the lease controls); *Sportsman's Warehouse, Inc.*, 436 B.R. at 315 ("The amount of the benefit to the estate is presumed to be the contract rate of rent.").

28. Accordingly, SIR is entitled to either payment or, alternatively, an administrative claim, in the amount of the Hanover Postpetition Obligations.

C. Blanket Abandonment of Unidentified Property
   <u>Unnecessarily Exposes Each Property to Waste and Damage</u>

29. The Proposed Order provides for the abandonment of "Related Property" at each facility, which is broadly defined and may include furniture and miscellaneous equipment. As an initial matter, such abandonment violates Section 22 of the Huntsville Lease and Section 22 of the Hanover Lease, which require that the Debtors remove all personal property before either property may be restored to Landlord. The sheer amount of space leased by the Debtors from

9

SIR, nearly 2 million square feet, leaves Landlord particularly exposed to risk and cost associated with disposal of abandoned property.

30.     Further, upon information and belief, there exist potential environmental issues related to abandoned property; any such abandonment in violation of state statute or regulation designed to protect the public health and safety must not be effective.  The speed with which the Debtors are attempting to force the rejection and abandonment of unidentified property leave SIR without adequate time to evaluate the condition of either Premises and analyze environmental conditions.

31.     The potential for environmental issues at the Hanover Property is not unknown to the Debtors.  These issues and the potential cost of remediation were well-known to the Debtors and the Landlord at the time of execution of the Lease in 2008.  The Hanover Lease makes the Debtors responsible for any repair and/or remediation, which work was to be done on an ongoing basis during the tenancy.  Highlighting this understanding is Section 50(h), requiring that the Debtors complete a Phase I environmental site assessment on or before the tenth (10th) anniversary of the Effective Date of the Lease or within sixty (60) days following an earlier termination.  The Landlord's concern about the Motion to Reject and its timing is heightened in the context of this knowledge.

32.     At the Huntsville Premises, the Landlord is aware of facility maintenance and potential environmental issues.  In light of the rejection of both the Huntsville Lease and Huntsville Sublease and the impact of other lease documents, responsibility for the maintenance is in question.

33.     The Proposed Order (i) must address the concerns regarding environmental issues and conditions; (ii) must address the financial concerns relating to removal, either that the

Debtors must assume responsibility for cost associated with removing any and all abandoned property or that the Proposed Order must provide for complete payment to Landlord for that cost; (iii) if permitted, clarify that all abandoned property is free and clear of claims, liens and encumbrances (including by subtenants); and (iv) if permitted, identify a date certain by which Landlord may dispose of abandoned property.

E. <ins>The Debtors are not Entitled to the Relief Contemplated by Paragraph 4 of the Proposed Order</ins>

34. The Debtor's Proposed Order seeks to impose a Rejection Damage Bar Date of thirty (30) days of entry of the Order and grant the Debtors a broad waiver and release regarding that rejection damages claim. Specifically, Section 4 provides in pertinent part:

> Any Rejection Damage Claims not asserted in a proof of claim filed on or before the Rejection Damage Bar Date are hereby deemed waived, released, and disallowed pursuant to section 502(b)(9) of the Bankruptcy Code, and all counterparties to the Leases shall be, from and after the Rejection Damage Bar Date, barred, estopped, and enjoined from asserting any Rejection Damage Claims that were not timely filed in accordance with this paragraph.

35. First, like the Motion to Reject itself, the proposed Rejection Damage Bar Date is unnecessarily early in the case. The Debtors' Schedules and Statements will not be filed until April 24, 2017 (fixed by the Court on a date earlier than requested by the Debtors) and is without prejudice to a request for a further extension by the Debtor. Such timing for a Rejection Damage Bar Date is unreasonable in light of the Debtors' delay gathering their own financial information.

36. To the extent that the Court is inclined to fix a Rejection Damage Bar Date, in light of the early stage of this case, such date should be no less than ninety (90) days following entry of an Order, with room for adjustment in the event the Debtors have not filed their Statements and Schedules by that point.

11

88181989.3

37. Next, the Debtors' are not entitled to a release in paragraph 4, but rather the Landlord should be permitted to freely amend and/or seek leave to file a late proof of claim, if appropriate. Accordingly, the second sentence of paragraph 4 of the Proposed Order should be stricken.

**WHEREFORE**, SIR respectfully requests that the Court enter an order consistent with this Objection and grant such other and further relief as is just and equitable.

> DRINKER BIDDLE & REATH LLP
> A Delaware Limited Liability Partnership
> 600 Campus Drive
> Florham Park, New Jersey 07932-1047
> (973) 549-7000
> *Attorneys for SIR Properties Trust*
>
>
> By: */s/ Marita S. Erbeck*
>      Marita S. Erbeck

Dated: March 28, 2017
      Florham Park, New Jersey

88181989.3